**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DECKMAN COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN NAUMAN and HAVTECH, LLC d/b/a HAVTECH,<br><br>Defendants. | Civil Action No. ___________<br><br>Filed on behalf of Plaintiff Deckman Company |

**COMPLAINT**

Plaintiff Deckman Company ("Deckman") files this Complaint against Christian Nauman ("Nauman") and Havtech, LLC d/b/a Havtech ("Havtech") and states as follows:

**INTRODUCTION**

1. This case concerns a former senior sales representative of Deckman Company who voluntarily resigned his employment, falsely claimed he was leaving the commercial HVAC industry entirely, and then immediately began working for a direct competitor in violation of a valid and enforceable non-solicitation agreement. Having spent over seven years building customer relationships and accumulating confidential business information on Deckman's behalf, Nauman has now turned those assets against his former employer by competing in the same commercial HVAC market, soliciting customers assigned to his commission account, and engaging with the very manufacturers Deckman represents — all within the one-year restricted period and within the geographic territory covered by his contractual obligations. Deckman files this Complaint to enforce the contractual commitments Nauman freely made as a condition of his employment and to protect the legitimate business interests those commitments were designed to

safeguard.

2. Nauman worked for Deckman from March 1, 2018 until December 15, 2025, serving first as Sales Manager and later as Sales Representative. During that time, he was entrusted with Deckman's most valuable commercial assets: its customer relationships, its manufacturer partnerships, and its confidential business methods. In exchange for those opportunities, Nauman agreed on two occasions — first when his employment began in 2018 and again in 2024 when his compensation structure was changed — not to solicit customers or Deckman employees in the commercial HVAC business within his assigned territory for a period of one year following his termination, not to solicit customers assigned to his commission account, and not to convert Deckman's customer information or trade secrets.

3. Within weeks of his departure, Nauman began working for Havtech, a commercial HVAC manufacturer's representative operating in direct competition with Deckman. He attended industry events on behalf of Havtech involving Deckman's customers and principals, contacted current Deckman employees about his new role, and facilitated Havtech's solicitation of accounts that had been assigned to him during his Deckman employment. Deckman sent multiple demand letters requesting compliance. Nauman and his counsel refused, claiming the non-solicitation is unenforceable for lack of consideration. Deckman disputes that position and files this action to enforce the Agreements and recover the damages caused by Defendants' breach.

**PARTIES**

4. Plaintiff Deckman Company is a domestic business corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1200 Cuddy Lane, Cuddy, Allegheny County, Pennsylvania 15031. Deckman is a manufacturer's representative involved in commercial and industrial heating, ventilation, and air conditioning

("HVAC").

5. Defendant Christian Nauman is an adult individual who resides in Sewickley, Pennsylvania 15143. Nauman is a former employee of Deckman who served as a Sales Manager and later as a Sales Representative until his resignation on December 2, 2025.

6. Defendant, Havtech, LLC d/b/a Havtech, is a competitor of Deckman with its headquarters located at 9505 Berger Road, Columbia, Maryland 21046.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this civil action arises under the laws of the United States. Specifically, Deckman asserts a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

8. The Defend Trade Secrets Act authorizes the owner of a misappropriated trade secret to bring a civil action if the trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce. Deckman's DTSA claim satisfies that requirement because Deckman represents manufacturers of commercial HVAC equipment and products to contractors, engineers, and owners in its assigned territory, and Nauman's assigned territory included Western Pennsylvania and West Virginia, where he was responsible for generating profitable sales of products sold by the manufacturers Deckman represents.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Deckman's related Pennsylvania law claims because those claims arise from the same case or controversy as the federal DTSA claim, including Nauman's alleged acquisition, use, disclosure, or threatened use of Deckman's confidential business information and trade secrets after leaving Deckman for Havtech.

10. This Court has personal jurisdiction over Nauman because he resides in Allegheny County, Pennsylvania, and a substantial part of the events giving rise to this action — including Nauman's employment with Deckman, his execution of the Employment Agreements, and his post-employment competitive activities — occurred in Allegheny County, Pennsylvania, within this District.

11. Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims detailed herein occurred in this district, including the execution and performance of the employment agreements and the acts of breach set forth below, and because both parties reside or maintain their principal place of business within this district.

## FACTS

### I. Background on Deckman Company

12. Deckman was established in 1922 and has operated as a manufacturer's representative involved in commercial and industrial heating, ventilation, and air conditioning for over a century. Deckman represents manufacturers of commercial HVAC equipment and products to contractors, engineers, and owners in its assigned territory.

13. Deckman's success depends significantly on the personal relationships its sales representatives build with contractors, engineers, and other customers in the commercial HVAC market. These relationships are developed over time through sustained contact, expertise, and trust. Deckman also relies on carefully developed methods of doing business and confidential information about its manufacturers, customers, and prospective customers.

## II. Nauman's Employment and Role at Deckman

14. Nauman began working for Deckman on March 1, 2018, in the position of Sales Manager. In that role, his responsibilities included managing outside salespersons and developing contractor relationships, managing inside sales and estimating, and conducting outside sales for contractor and engineering accounts.

15. In consideration of his employment, Nauman received a base salary of $7,725.00 per month, a car allowance of $400.00 per month, a cell phone allowance of $50.00 per month, a monthly entertainment expense account of up to $500.00, contribution to UPMC medical insurance, term life insurance in the amount of $50,000.00, 401K retirement plan eligibility, and paid days off. His assigned territory was Western Pennsylvania and West Virginia.

16. On January 1, 2024, Nauman entered into an updated Employment Agreement with Deckman in the position of Sales Representative. His base salary remained $7,725.00 per month, but his compensation structure changed from being calculated based the sales of five (5) people that he supervised compared to receiving commissions directly from the twenty-seven (27) direct accounts assigned to him. As Sales Representative, Nauman was responsible for building and maintaining relationships with contractors, engineers, and owners assigned to his commission account in Western Pennsylvania and West Virginia, and for generating profitable sales of the products sold by the manufacturers Deckman represents.

17. During his employment, Nauman had access to and developed detailed knowledge of Deckman's confidential business information, including: the identity and particular needs of customers assigned to his commission account; the methods of doing business that Deckman utilizes; the manufacturers that Deckman represents and the terms and details of those relationships; pricing and commission structures; and the business strategies Deckman employs in

the commercial HVAC market.

18. Nauman worked for Deckman for approximately seven and a half years. By the time of his resignation, he had developed significant relationships with customers assigned to his commission account in Pennsylvania and West Virginia on Deckman's behalf.

**III. <u>Nauman's Contractual Obligations to Deckman</u>**

19. In consideration of his initial employment with Deckman, including his salary, compensation, benefits, training in Deckman's business, and access to Deckman's manufacturer relationships, customer relationships, and confidential business methods, Nauman entered into an Employment Agreement with Deckman dated February 7, 2018 (the "2018 Agreement"). (Attached as Ex. 1). The 2018 Agreement's non-compete covenant states, in pertinent part:

> This Agreement is in recognition and consideration of the Employee's employment, compensation and fringe benefits, the training which the Employer will give Employee in the Employer's business and the Employee's interaction with the manufacturers that Employer represents, the Employer's customers, and prospective customers made in the course of Employee's employment with the Employer and the carefully guarded methods of doing business which the Employer utilizes and deems crucial to the successful operation of its business. If the Employee terminates this agreement or if he or she is terminated by the Employer for cause, such as theft, Employee covenants that he or she will not during the term of this Agreement, for a period of one year prior to termination, or for a period of one year immediately following termination, either directly or indirectly, own, manage, operate, control, be employed or retained by, participate in or be connected in any manner with any existing or newly created competitors in the commercial HVAC business or manufacturers that the Employer represents within a one-hundred-fifty (150) mile radius of Pittsburgh, Pennsylvania, or solicit customers assigned to the Employee's commission account or, convert customer information, trade company secrets. Employee acknowledges that this Agreement is not to exploit for his own behalf manufacturers/customers that the employer represents.

20. The 2018 Agreement was signed prior to Nauman's first day of employment and was incident to the employment relationship. It was supported by adequate consideration, including initial employment, salary, compensation, benefits, training, access to Deckman's manufacturer and customer relationships, and access to Deckman's confidential business methods.

21. On January 1, 2024, Nauman entered into a revised Employment Agreement with Deckman (the "2024 Agreement"). (Attached as Ex. 2). The 2024 Agreement's non-compete covenant states, in pertinent part:

> This Agreement is in recognition and consideration of the Employee's employment, compensation, and fringe benefits, the training which the Employer will give Employee in the Employer's business and the Employee's interaction with the manufacturers that the Employer represents, the Employer's customers, and prospective customers made in the course of Employee's employment with the Employer and the carefully guarded methods of doing business which the Employer utilizes and deems crucial to the successful operation of its business. If the Employee terminates this agreement or if he or she is terminated by the Employer for cause, such as theft, the Employee covenants that he or she will not during the term of this Agreement, for a period of one year prior to termination, or for a period of one year immediately following termination, either directly or indirectly, own, manage, operate, control, be employed or retained by, participate in or be connected in any manner with any existing or newly created competitors in the commercial HVAC business or manufacturers that the Employer represents within the assigned territory in Exhibit D or solicit customers assigned to the Employee's commission account or, convert customer information, trade company secrets. Employee acknowledges that this Agreement is not to exploit for his own behalf manufacturers/customers that the employer represents.

22. The 2024 Agreement was supported by adequate consideration. In connection with the execution of the 2024 Agreement, Deckman assigned new commissionable accounts to Nauman, providing him with an additional opportunity to earn commissions from customers not previously on his commission account. His compensation structure changed from being calculated based the sales of five (5) people that he supervised compared to receiving commissions directly from the twenty-seven (27) direct accounts assigned to him. Nauman's compensation was also structured to establish goals for achieving profit goals and different bonus structure, continued access to the full range of employment benefits, and continued access to Deckman's manufacturer relationships and customer base. This compensation constituted new and valuable consideration supporting the 2024 Agreement.

23. Together, the 2018 Agreement and the 2024 Agreement are referred to herein as the "Agreements." The Agreements are governed by the laws of the Commonwealth of Pennsylvania.

24. The non-solicitation covenants in the Agreements are incident to Nauman's employment relationship with Deckman, are reasonably necessary for the protection of Deckman's legitimate business interests in its customer goodwill, manufacturer relationships, and confidential information, and are reasonably limited in duration and geographic extent. The 2018 Agreement restricts Nauman for one year within a 150-mile radius of Pittsburgh, Pennsylvania. The 2024 Agreement restricts Nauman for one year within the assigned territory in Western Pennsylvania and West Virginia only for his commissioned accounts. These geographic and durational limitations directly track the territory in which Nauman worked and developed customer relationships on Deckman's behalf.

## IV. Nauman's Resignation and New Employment at Havtech

25. On December 2, 2025, Nauman submitted his resignation letter to Deckman, stating that his last day of employment would be December 12, 2025. In his resignation letter, Nauman acknowledged his seven-and-a-half years of service to Deckman.

26. At the time of his resignation, Nauman informed Deckman that he was going to work with his wife outside of the HVAC industry.

27. This representation was false. In fact, Nauman had accepted a position with Havtech, a commercial HVAC manufacturer's representative with offices at 193 Thorn Hill Road, Suite 210, Warrendale, Pennsylvania 15086 and at 9505 Berger Road, Columbia, Maryland 21046. Havtech operates in the commercial HVAC business and is a direct competitor of Deckman, representing manufacturers in the same market in which Deckman operates.

28. Nauman's employment with Havtech is a direct violation of his non-solicitation obligations under the Agreements. Havtech competes with Deckman in the commercial HVAC business within Nauman's assigned territory.

## V. Nauman's Acts of Breach

29. Within weeks of his departure from Deckman, Nauman began engaging in competitive activities on behalf of Havtech in violation of the Agreements.

30. On or about January 22, 2026, Nauman attended a WG Tomko "industry night" at Crafty Jackalope. WG Tomko was a customer assigned to Nauman's commission account during his employment with Deckman. Nauman's attendance on behalf of Havtech at an industry event involving a former Deckman commission account customer violates the Agreements.

31. On or about January 28, 2026, Nauman contacted a current Deckman salesman regarding his new position at Havtech, specifically stating that he was visiting customers in West Virginia and describing Havtech as a great place to work. It was also discovered that Nauman contacted another current Deckman salesman inquiring about his employment. These contacts demonstrate that Nauman was actively conducting business on behalf of a direct Deckman competitor in the restricted territory and using connections developed during his Deckman employment in furtherance of his activities for Havtech, in violation of the Agreements.

32. On or about February 2, 2026, Nauman was engaged with Fabric Air at the AHR Expo in Las Vegas, Nevada, one of the largest commercial HVAC industry events. Fabric Air is a manufacturer that Deckman represents, and Nauman had previously sold Fabric Air products to commissionable accounts on behalf of Deckman. Nauman's engagement with a Deckman-represented manufacturer on behalf of Havtech at an industry trade show violates the Agreements.

33. On or about March 6, 2026, Deckman received information that Nauman's new email address at Havtech had been included on the bid board of First American Industries, Inc., a company that was a former commission account of Nauman during his employment at Deckman. This activity constitutes solicitation of a customer assigned to Nauman's commission account in violation of the Agreements.

34. On May 8, 2026, Will Lorenchick, a Havtech Account Manager, emailed W.G Tomko to formally introduce Nauman as its new Havtech contact for HVAC airside products, stating: "Chris is your new point of contact for the airside. He is copied in on this email and can help with the fans." By this date, W.G. Tomko's purchases from Deckman had collapsed from $183,634.22 in 2025 and to $43,582.00 sales in 2026.

35. On June 1, 2026, Kyle Bylicki, a Project Engineer at W.G. Tomko, contacted Nauman at his Havtech email address (cnauman@havtech.com) to request a quote on thirteen grilles for the Seneca Valley School District Rowan Elementary renovation project (Job No. SJ0054). Nauman, signing his response as "Christian Nauman, Account Manager, Havtech Air Distribution," provided the quote. On June 3, 2026, W.G. Tomko issued Purchase Order No. 156240 to Nauman at Havtech for those grilles. Deckman had also submitted a bid to W.G. Tomko for that same project on May 1, 2026.

36. On June 4, 2026, Nathan Puckett of W.G. Tomko contacted Nauman at his former Deckman email to solicit quotes for the Shippingport Data Center project, seeking pricing on GRDs, Fire Dampers, Fire Smoke Dampers, Louvers, and VAVs.

37. On June 11, 2026, Ryan Wohlfarth received another email, noting: "Here is another email that one of Chris's former customers meant to send to his Havtech account." The email was from Craig Bourgeois of Elk Air Conditioning, a Deckman assigned account, contacting Nauman

in connection with the Three Rivers Endo Harmar project.

38. On July 30, 2026, Ryan Wohlfarth received another email, noting: "Another customer meant to send this to Chris at Havtech. This was a big account of his". The email was from Pauline Crouse of Standard Air & Lite Corp, a Deckman assigned account, contacting Nauman in connection with the Next Level Heating & Cooling project.

39. Nauman's conduct confirms that he is utilizing the customer relationships, manufacturer connections, and confidential business information he developed during his employment at Deckman to benefit Havtech and to compete against Deckman in violation of the Agreements.

## VI. <u>Deckman's Demand for Compliance and Nauman's Refusal</u>

40. Deckman developed suspicions and sent written demand letters to Nauman and to Havtech notifying them of Nauman's restrictive covenant obligations and demanding that he cease and desist from the prohibited competitive activities. Deckman's communications demanded that Nauman (a) immediately cease activities that violate the Agreements; (b) confirm in writing that he was not performing and would not perform work for Havtech that violates the Agreements; (c) preserve all documents and electronically stored information relevant to these issues; and (d) return or permanently delete any Deckman confidential information in his possession.

41. On March 23, 2026, counsel for Nauman responded to Deckman's demands and refused to comply, asserting that the 2024 Agreement is unenforceable for lack of consideration and that Nauman had not engaged in improper solicitation. Nauman's counsel reiterated this position in a subsequent letter dated May 1, 2026.

42. Nauman has not confirmed compliance with the Agreements and continues to be employed by Havtech in the commercial HVAC business within the restricted territory.

43. As a direct and proximate result of Nauman's breach of the Agreements, Deckman has suffered and continues to suffer damages, including loss of customer relationships, loss of revenue, loss of competitive advantage, and harm to the goodwill that Deckman built with its customers and manufacturers over the course of Nauman's employment.

## COUNT I: MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT
**18 U.S.C. § 1836 et seq. and 12 Pa. C.S. §5301 et seq.**
**Against Defendants Christian Nauman and Havtech, LLC d/b/a Havtech**

44. Plaintiff Deckman Company incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

45. The Defend Trade Secrets Act permits the owner of a misappropriated trade secret to bring a civil action if the trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce. The DTSA defines "trade secret" to include financial, business, technical, economic, and other business information, including compilations, methods, techniques, processes, procedures, and other information, if the owner has taken reasonable measures to keep the information secret and the information derives independent economic value from not being generally known or readily ascertainable through proper means by another person who can obtain economic value from its disclosure or use.

46. Deckman owns confidential and proprietary trade secret information used in its commercial and industrial HVAC manufacturer's representative business. Deckman's trade secrets include confidential compilations of customer account information, including assigned-account lists, customer purchasing history, account-specific needs and preferences, pricing and margin strategies, sales-volume data, commission-account assignments, manufacturer relationship information, and proprietary sales methods developed through Deckman's time, expense, and customer goodwill.

47. Deckman has operated as a manufacturer's representative in the commercial and industrial HVAC industry for over a century, represents manufacturers of commercial HVAC equipment and products to contractors, engineers, and owners in its assigned territory, and depends significantly on customer relationships developed over time through sustained contact, expertise, and trust.

48. Nauman worked for Deckman as a Sales Representative responsible for building and maintaining relationships with contractors, engineers, and owners assigned to his commission account in Western Pennsylvania and West Virginia, and during his employment he had access to and developed detailed knowledge of Deckman's confidential business information, including the identity and particular needs of assigned customers, Deckman's methods of doing business, manufacturer relationships and the terms and details of those relationships, pricing and commission structures, and Deckman's commercial HVAC business strategies.

49. Deckman's confidential account information was not merely a list of names available to the public. It reflected Deckman's internal assignment of customer accounts, accumulated customer relationship intelligence, pricing and commission information, sales performance information, and business strategy information developed through years of Deckman's work in the HVAC market.

50. Nauman's commissioned-customer list included numerous assigned accounts, including APR Supply Co., Bilfinger, Buckeye Mechanical, D & G Mechanical, D & M Mechanical Contracting, De-Cal, Delattre Corporation, Elk A/C, Inc., First American, Hampton Mechanical, Hranec Sheet Metal, Huckestein Mechanical Services, McKamish, Pine Hollow Mechanical, Inc., Renick Brothers Mechanical, Sentry Mechanical Inc., Standard Air & Lite, and State Electric Supply.

51. Deckman's trade secrets derive independent economic value from not being generally known and not being readily ascertainable through proper means. A competitor with access to Deckman's account assignments, purchasing histories, pricing strategy, sales-volume data, customer needs, manufacturer relationship information, and proprietary sales methods could target Deckman's most valuable accounts, undercut Deckman's pricing strategy, accelerate customer diversion, and avoid the time and expense Deckman invested in developing those relationships and account intelligence.

52. Deckman took reasonable measures to maintain the secrecy of its trade secrets. Nauman's 2024 Employment Agreement recognized his employment, compensation, training, customer and manufacturer interactions, and Deckman's "carefully guarded methods of doing business," and prohibited him from soliciting customers assigned to his commission account or converting customer information and company trade secrets.

53. The trade secrets at issue relate to Deckman's commercial HVAC products and services used in, or intended for use in, interstate commerce. Deckman represents manufacturers of commercial HVAC equipment and products to contractors, engineers, and owners in its assigned territory. Nauman's assigned territory included Western Pennsylvania and West Virginia, and his Sales Representative role required him to generate profitable sales of products sold by manufacturers Deckman represents.

54. Defendants acquired, used, disclosed, or threatened to use or disclose Deckman's trade secrets without Deckman's consent. Nauman acquired Deckman's trade secrets during his employment and under circumstances giving rise to duties to maintain their secrecy and limit their use to Deckman's business.

55. After more than seven years building customer relationships and accumulating confidential business information on Deckman's behalf, Nauman resigned, began working for Havtech, a commercial HVAC manufacturer's representative operating in direct competition with Deckman, and facilitated Havtech's solicitation of accounts assigned to him during his Deckman employment.

56. These acts show that Nauman and Havtech used or threatened to use Deckman's confidential customer account intelligence, customer relationship information, account assignments, pricing information, sales history, and business methods to solicit, quote, service, and divert Deckman customer accounts for Havtech's benefit.

57. Nauman's post-employment conduct included activity in the restricted territory, contact with former Deckman commission accounts, contact with Deckman-represented manufacturers, quoting business for W.G. Tomko through Havtech, and customer communications intended for Nauman at Havtech but sent to his former Deckman email account.

58. Nauman's conduct confirms that he is utilizing the customer relationships, manufacturer connections, and confidential business information he developed during his Deckman employment to benefit Havtech and to compete against Deckman.

59. Defendants' conduct constitutes misappropriation under the DTSA because Defendants acquired, disclosed, used, or threatened to use Deckman's trade secrets without consent, while knowing or having reason to know that the information was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use.

60. Deckman has identified its trade secrets with sufficient particularity by identifying the specific categories of confidential account information at issue, the specific assigned customer

accounts, the relevant sales figures and account values, the pricing and quoting activity, and the post-employment customer diversion activity involving Nauman and Havtech.

61. As a direct and proximate result of Defendants' misappropriation, Deckman has suffered and will continue to suffer actual loss, unjust enrichment to Defendants, loss of customer relationships, loss of goodwill, lost sales, lost business opportunities, loss of competitive advantage, and harm that cannot be fully remedied by money damages alone.

62. Deckman's harm includes the diversion and impairment of customer relationships it invested years and significant resources to build.

63. Deckman is entitled to injunctive relief prohibiting Defendants from acquiring, using, disclosing, retaining, transmitting, relying upon, or benefiting from Deckman's trade secrets or confidential information, including Deckman's customer account information, assigned-account lists, customer purchasing history, account-specific needs and preferences, pricing and margin strategies, sales-volume data, commission-account assignments, manufacturer relationship information, and proprietary sales methods.

64. Deckman is further entitled to an order requiring Defendants to return, delete, and certify the return or deletion of all Deckman trade secrets and confidential information in their possession, custody, or control, including any such information retained on personal devices, email accounts, cloud accounts, computers, phones, tablets, or Havtech systems.

65. Deckman is entitled to recover damages for its actual loss and Defendants' unjust enrichment, or, in the alternative, a reasonable royalty for Defendants' unauthorized disclosure or use of Deckman's trade secrets.

66. To the extent discovery shows Defendants' misappropriation was willful and malicious, Deckman is entitled to exemplary damages and reasonable attorney's fees under the DTSA.

WHEREFORE, Plaintiff Deckman Company respectfully requests that this Court enter judgment in its favor and against Defendants Christian Nauman and Havtech, LLC d/b/a Havtech, award temporary, preliminary, and permanent injunctive relief, require the return and deletion of Deckman's trade secrets and confidential information, award compensatory damages, unjust enrichment, or a reasonable royalty, award exemplary damages and attorney's fees if supported by the evidence, award costs, and grant all other relief the Court deems just and proper.

**COUNT II: BREACH OF CONTRACT**
(Against Defendants Christian Nauman and Havtech)

67. Deckman incorporates the allegations of paragraphs 1 through 65 as though fully stated herein.

68. The Agreements are valid and enforceable contracts under the laws of the Commonwealth of Pennsylvania, supported by adequate consideration. Under Pennsylvania law, a non-solicitation agreement is enforceable if (1) it is incident to an employment relationship between the parties, (2) the restrictions are reasonably necessary for the protection of the employer, and (3) the restrictions are reasonably limited in duration and geographic extent. *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 252 (Pa. 1976); *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1168 (Pa. 1977). All three elements are satisfied here.

69. First, the non-solicitation covenants are incident to an employment relationship between the parties. The 2018 Agreement was signed as a condition of Nauman's initial employment with Deckman and the 2024 Agreement was supported by increased commission accounts and an increased compensation structure. It is therefore supported by adequate

consideration in the form of initial employment, compensation, benefits, and access to Deckman's customers, manufacturers, and confidential business methods.

70. Second, the restrictions are reasonably necessary for the protection of Deckman's legitimate business interests. Deckman's business depends on the relationships its representatives develop with contractors, engineers, and other customers in the commercial HVAC market. These customer relationships and the goodwill associated with them are Deckman's assets, built over time through investment and effort, and are protectible through a non-compete covenant. *John G. Bryant Co.*, 369 A.2d at 1168 ("The employer's point of view is that the company's clientele is an asset of value which has been acquired by virtue of effort and expenditures over a period of time, and which should be protected as a form of property."). Deckman also has a legitimate interest in protecting its confidential business information, including its customer relationships, manufacturer arrangements, pricing structures, and business methods, which Nauman accumulated during his seven-and-a-half years of employment. *Robert Half of Pa., Inc. v. Feight*, No. 1667 (Phila. C.P. Commerce Program Apr. Term 2000) ("[T]rade secrets of an employer, customer goodwill and specialized training and skills acquired from an employer are all legitimate interests protectible through a general restrictive covenant."); *Dorman Prods., Inc. v. Cardello*, No. 2:25-cv-04249-JHS (E.D. Pa. Oct. 7, 2025).

71. Third, the restrictions are reasonably limited in duration and geographic extent. The non-solicitation covenants restrict Nauman for one year following termination, a duration that Pennsylvania courts have consistently recognized as reasonable for a sales representative in a competitive commercial market. The geographic scope — a 150-mile radius of Pittsburgh under the 2018 Agreement, and the assigned sales territory of Pennsylvania and West Virginia under the 2024 Agreement — is directly tied to the territory in which Nauman actually worked and

developed relationships on Deckman's behalf. This geographic scope is both reasonable and appropriate.

72. Deckman has performed all obligations under the Agreements, including providing Nauman with employment, compensation, benefits, training, access to customer relationships, access to manufacturer partnerships, and access to Deckman's confidential business information.

73. Nauman has breached the Agreements by, among other things:

a. accepting employment with Havtech, a direct competitor in the commercial HVAC business operating within the restricted territory, within one year of his resignation from Deckman;

b. attending industry events on behalf of Havtech involving customers that were assigned to his commission account during his Deckman employment, including the WG Tomko industry event on or about January 22, 2026;

c. contacting current Deckman employees regarding his new position at Havtech and describing Havtech as a great place to work;

d. engaging with Fabric Air, a manufacturer that Deckman represents, at the AHR Expo on or about February 2, 2026, in his capacity as a Havtech representative; and

e. facilitating the placement of his Havtech contact information on the bid board of First American Industries, Inc., a former commission account of Nauman during his Deckman employment, on or about March 6, 2026.

74. Nauman's breaches have caused, and continue to cause, Deckman to suffer irreparable harm and substantial monetary damages, including loss of customer relationships and goodwill built during Nauman's employment, loss of revenue from diverted commission accounts,

loss of competitive advantage, and harm to Deckman's relationships with the manufacturers it represents.

75. The harm to Deckman from Nauman's breach of the non-solicitation obligations cannot be adequately compensated by monetary damages alone, because Deckman's losses include the disruption of established customer relationships, the diversion of business opportunities, and the erosion of goodwill that are, by their nature, incapable of precise monetary valuation. *John G. Bryant Co.*, 369 A.2d at 1167-68 ("This is clearly an interest which is incapable of adequate protection by monetary damages and the use of equitable relief is needed to avoid the threatened harm."); *York Grp., Inc. v. Yorktowne Caskets, Inc.*, 924 A.2d 1234, 1242 (Pa. Super. 2007) ("An injury is regarded as 'irreparable' if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard" and "the impending loss of a business opportunity or market advantage also may be aptly characterized as an 'irreparable injury' for purposes of equitable relief").

76. The equities favor relief. Nauman would not be unduly burdened by compliance with the Agreements, which restrict him only from competing in the commercial HVAC business within a defined territory for one year and only upon his direct accounts. Nothing in the Agreements prevents him from pursuing accounts in the HVAC business that were not assigned to him at Deckman. Instead of honoring his contractual commitments, Nauman went directly to a competing commercial HVAC manufacturer's representative in his former territory and with his assigned accounts at Deckman.

77. The public interest favors the enforcement of valid contractual non-solicitation agreements and the protection of legitimate business interests. Allowing an employee to ignore freely assumed contractual obligations would undermine the enforceability of such covenants and

permit the unauthorized use of customer goodwill and confidential information built at Deckman's expense.

**<u>COUNT III: INJUNCTIVE RELIEF</u>**
(Against Defendants Christian Nauman and Havtech)

78. Deckman incorporates the allegations of paragraphs 1 through 76 as though fully stated herein.

79. Deckman has a clear right to relief and a likelihood of success on the merits of its breach of contract claim. The Agreements are valid and enforceable contracts, and Nauman has breached them by accepting employment with a direct competitor in the commercial HVAC business within the restricted territory, by attending industry events with customers assigned to his Deckman commission account, by engaging with manufacturers that Deckman represents, and by facilitating the placement of his Havtech contact information on the bid board of a former Deckman commission account.

80. Deckman will suffer immediate and irreparable harm absent injunctive relief. Nauman's ongoing competitive activities are causing Deckman to lose customer relationships, goodwill, and business opportunities that cannot be adequately compensated by money damages. The disruption of long-standing customer relationships and the diversion of manufacturer contacts built over years of service are harms that are inherently unascertainable in dollar terms. *York Grp., Inc. v. Yorktowne Caskets, Inc.*, 924 A.2d 1234, 1242 (Pa. Super. 2007).

81. Greater injury will result from refusing the injunction than from granting it. If the injunction is denied, Nauman will continue to compete against Deckman using the customer relationships and confidential information he accumulated during his employment, causing ongoing and escalating harm to Deckman's business. If the injunction is granted, Nauman is simply required to abide by the contractual obligations he voluntarily assumed.

82. Injunctive relief will restore the parties to the status quo that existed before Nauman's post-employment competitive activities began.

83. An injunction is reasonably suited to abate the harm caused by Nauman's ongoing breach of the Agreements.

84. Injunctive relief will not adversely affect the public interest. The public interest is best served by enforcement of the non-solicitation obligations Nauman freely entered into.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Deckman Company respectfully requests that this Court enter judgment in its favor and against Defendant Christian Nauman and Havtech, jointly and severally where permitted by law, and award the following relief:

A. Enter judgment in favor of Deckman and against Defendants on all counts of the Complaint;

B. Enter temporary, preliminary, and permanent injunctive relief prohibiting Defendants, and all persons acting in concert with them who receive actual notice of the Court's order, from using, disclosing, transmitting, retaining, relying upon, or benefiting from Deckman's trade secrets and confidential information, including but not limited to customer account information, assigned-account lists, customer purchasing history, account-specific needs and preferences, pricing and margin strategies, sales-volume data, commission-account assignments, manufacturer relationship information, vendor and manufacturer relationship information, and proprietary sales methods;

C. Enjoin Defendants from soliciting, servicing, quoting work for, accepting business from, or otherwise conducting business with any customer account assigned to Nauman's commission account during his employment with Deckman, including W.G. Tomko, Elk A/C,

First American, Standard Air & Lite, Hranec Sheet Metal, McKamish, Hampton Mechanical, and the other assigned customer accounts identified in the Complaint;

D. Enjoin Defendants from breaching, inducing the breach of, aiding the breach of, or otherwise interfering with Nauman's employment agreements, restrictive covenants, non-solicitation obligations, confidentiality obligations, and trade-secret obligations owed to Deckman;

E. Order Defendants to return to Deckman all Deckman trade secrets, confidential information, customer information, sales data, pricing data, business records, documents, electronically stored information, and company property in their possession, custody, or control, including any such information stored on personal devices, cloud accounts, email accounts, computers, phones, tablets, external drives, or Havtech systems;

F. Order Defendants to permanently delete or destroy all copies of Deckman trade secrets and confidential information not returned to Deckman, and to provide a sworn certification describing the steps taken to return, delete, destroy, and prevent further use or disclosure of such information;

G. Award Deckman damages for actual loss caused by Defendants' misappropriation of Deckman's trade secrets under the DTSA and PUTSA, including damages for actual loss caused by misappropriation of trade secrets;

H. Award Deckman damages for any unjust enrichment caused by Defendants' misappropriation that is not otherwise accounted for in computing actual loss, or, alternatively, a reasonable royalty for Defendants' unauthorized disclosure or use of Deckman's trade secrets;

I. Award Deckman damages for Defendants' breach of contract, tortious interference, and any other state-law claims proven at trial, including lost sales, lost profits, lost business opportunities, harm to customer goodwill, and loss of competitive advantage;

J. Award exemplary damages under the DTSA if discovery and proof show willful and malicious misappropriation, because the DTSA permits exemplary damages up to two times the damages award for willful and malicious misappropriation;

K. Award exemplary damages under the Pennsylvania Uniform Trade Secrets Act if discovery and proof show willful and malicious misappropriation;

L. Award Deckman reasonable attorney's fees, expenses, and costs under the DTSA if permitted by law, including upon a showing of willful and malicious misappropriation or other statutory grounds, because the DTSA permits reasonable attorney's fees to the prevailing party in specified circumstances, including willful and malicious misappropriation;

M. Award Deckman reasonable attorney's fees, expenses, and costs under PUTSA if permitted by law, including upon a showing of willful and malicious misappropriation or other statutory grounds;

N. Award pre-judgment and post-judgment interest to the fullest extent permitted by law;

O. Award Deckman its taxable costs of suit; and

P. Grant such other and further relief as the Court deems just, equitable, and proper.

## **JURY DEMAND**

Plaintiff Deckman Company demands a trial by jury on all issues so triable.

Dated: August 27, 2026

Respectfully submitted,

PAUL LAW OFFICES

/s/ *Gregory G. Paul*
GREGORY G. PAUL, ESQUIRE
PA ID No. 83334
960 Penn Avenue, Suite 1001
Pittsburgh, PA 15222
gregpaul@paullaw.com
(412) 259-8375 * (888) 822-9421 (facsimile)

*Attorneys for Plaintiff Deckman Company*